UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH DAKOTA
CENTRAL DIVISION

| | |
|---|---|
| VALERIE ESTES, as the Special Administrator of the ESTATE OF SERYL LEROY POMANI, <br><br> Plaintiff, <br><br> vs. <br><br> HUGHES COUNTY, SOUTH DAKOTA, JACLYN LOWITZ, JULIE COX, BILL DODGE, MIKE LEIDHOLT and DEFENDANT DOES 1-5, all in their individual and official capacities, <br><br> Defendants. | 3:20-cv-3013 <br><br><br> **COMPLAINT WITH REQUEST FOR TRIAL BY JURY** |

COMES NOW Plaintiff Valerie Estes as the Special Administrator of the Estate of Seryl Leroy Pomani, and for the Complaint against the above-named Defendants, states and alleges the following claims:

## JURISDICTION AND VENUE

1.  This Court has jurisdiction over this action under 42 U.S.C. § 1983 pursuant to 28 U.S.C.A. §§ 1331 and 1343.

2.  Plaintiff's cause of action arose in Hughes County, South Dakota. Venue in this Court is proper under 28 U.S.C.A. § 1391(b).

## PARTIES

3.  Seryl Pomani ("Mr. Pomani") was an adult male resident of Rosebud, South Dakota who died on July 18, 2018 after being denied reasonably adequate medical care while in the custody of the Defendants in the Hughes County Jail between July 13, 2018 and July 16, 2018.

4.  Mr. Pomani is survived by a minor child and several siblings.

5.  Valerie Estes ("Ms. Estes") is Mr. Pomani's adult sister residing in Rosebud, South Dakota, and has been appointed as the Special Administrator of the Seryl Leroy Pomani Estate by the Hon. William T. Bossman of the Rosebud Sioux Tribal Court for the purpose of pursing this action.

6.  Defendant Hughes County is a duly incorporated county in South Dakota. At all times relevant to this action, Defendant Hughes County operated the Hughes County Jail ("HCJ"). Hughes County is responsible to develop, implement and enforce policies and procedures that are sufficient to provide for reasonably adequate medical care for the inmates in its custody.

7.  At all times relevant to this action, Defendant Jaclyn Lowitz  ("Nurse Lowitz" also known as Jaclyn Houghtaling) was an adult resident of South Dakota and who was employed by Hughes County as the HCJ Jail Nurse in July 2018.  Unless otherwise specifically stated in this action, Nurse Lowitz is sued in her individual capacity.

8.  At all times relevant to this action, Defendant Julie Cox ("Nurse Cox") was a South Dakota Nurse Practitioner the Avera healthcare system who was providing medical "outreach" for the HCJ and was identified to HCJ staff as Nurse Lowitz supervisor in July 2018.  Unless otherwise specifically stated in this action, Nurse Cox is sued in her individual capacity

9.  At all times relevant to this action, Bill Dodge ("Mr. Dodge") was an adult resident of South Dakota who was employed by Hughes County as its Jail Administrator.  In this capacity he was responsible for the supervision of jail staff, the creation, implementation and enforcement of jail policies and was also responsible for the supervision, protection and control of the inmates in the HCJ, including providing for the inmates' serious medical needs.   Unless otherwise specifically stated in this action, Mr. Dodge is sued in his individual capacity.

10. At all times relevant to this action, Mike Leidholt ("Sheriff Leidholt," for the purposes of this action) was an adult resident of South Dakota who was employed by Hughes County as its Sheriff. In this capacity he was responsible for the supervision of jail staff, the enforcement of jail policies and was also responsible for the supervision, protection and control of the inmates in the HCJ, including providing for the inmates' serious medical needs. Unless otherwise specifically stated in this action, Sheriff Leidholt is sued in his individual capacity.

11. At all times relevant to this action, Defendant Does 1-5 were employees of Hughes County in the Hughes County Jail in July 2018 and who, while on duty, were responsible for the supervision, protection and control of the inmates in the Hughes County Jail, including providing for the inmates' serious medical needs. Unless otherwise specifically stated in this action, these individuals are sued in their individual capacity.

## FACTUAL ALLEGATIONS

12. Hughes County contracts with and is paid by the US Marshals Service, ss well as other counties and entities, to provide custodial care for adults who are committed to custody through judicial order.

13. Hughes County is responsible for the operation of the Hughes County Jail, including providing for the safety, health care and serious medical needs of its inmates; the hiring, qualifications, supervision and training of its staff; the development and approval of policies and procedures so that inmates are not subject to excessive risk to their health or safety while in custody; and administrating the jail facility in compliance with federal and state safety laws and regulations to assure that inmates are not subject to excessive risk to their health or safety while in custody.

3

14. At all times relevant to the claims asserted in this Complaint and to the best of Plaintiff's knowledge, Hughes County employs a Jail Nurse who is directly responsible to supervise, assess and address inmates' safety, health care and serious medical needs, including the responsibility to advise and direct the Jail's correctional officers about how and when to provide medical care for inmates even if not personally present.

15. At all times relevant to the claims asserted in this Complaint and to the best of Plaintiff's knowledge, HCJ policy in July 2018 required that no inmate could be administered medication or medical care without the approval of Nurse Lowitz.

16. At all times relevant to the claims asserted in this Complaint and to the best of Plaintiff's knowledge, HCJ policy in July 2018 required its correctional staff to follow a chain of command to obtain medical care for inmates, namely, that staff had to get approval from Nurse Lowitz to seek further care. If Nurse Lowitz could not be contacted, staff was to contact Nurse Cox to approve further care. Only in the event of an obvious emergency was staff to call for emergency care, such as if an inmate was "bleeding out."

17. At all times relevant to the claims asserted in this Complaint and to the best of Plaintiff's knowledge, Mr. Dodge and Sheriff Leidholt made it clear to HCJ's correctional staff that failure to follow this medical chain of command and abide by the nurse's directives would subject the staff members to potential disciplinary action.

18. All times relevant to the claims asserted in this Complaint and to the best of Plaintiff's knowledge, Nurse Lowitz was a registered nurse and was aware of her duties and responsibilities to approve the distribution of prescribed and over the counter medications to HCJ inmates, to assess, evaluate and treat HCJ inmates for their need for further treatment, as well as

4

her responsibilities to address and to direct correctional staff regarding inmates' medical care and treatment,

19.  As the Jail Nurse, Nurse Lowitz assumed a duty of care for Mr. Pomani's medical needs while he was in custody at HCJ.

20.  At all times relevant to the claims asserted in this Complaint, Defendant Does 1-5 were correctional officers and staff members at HCJ who were responsible to address Mr. Pomani's safety, health care and serious medical needs while he was in HCJ custody.

21.  In June 2018, Mr. Pomani was indicted on allegations related to third degree burglary and larceny.   A warrant was issued for his arrest on these charges.

22.  On July 13, 2018, Mr. Pomani was taken into the custody by the US Marshals Service.

23.  Pursuant to its contract with the US Marshals Service, Mr. Pomani was transferred to and incarcerated at HCJ as a pretrial detainee on Friday, July 13, 2018.

24.  At that time on his July 13 detention at HCJ, Mr. Pomani had a documented medical history of several serious, chronic medical conditions, including Type 1 diabetes, diabetic neuropathy, asthmas, hypertension, hyperlipidemia, PTSD, and major depression. He was prescribed various medications for these conditions, including insulin.

25. Prior to July 2018, Mr. Pomani previously had been detained at HCJ so in July 2018, HCJ staff, including and Nurse Lowitz, were familiar with Mr. Pomani, including the fact that he had a complicated medical history.

26.  To the best of the Plaintiff's knowledge and understanding, the US Marshal who delivered Mr. Pomani into custody also delivered Mr. Pomani's prescription medications to the HCJ intake staff.

27. To the best of the Plaintiff's knowledge and understanding, to be able to dispense Mr. Pomani's medications during his incarceration, HCJ staff had to obtain the approval of Nurse Lowitz.

28. To the best of the Plaintiff's knowledge and understanding, during the intake booking process, the HCJ intake officer did an initial check of Mr. Pomani's blood sugar and Mr. Pomani's blood sugar registered between 350 and 400.

29. To the best of the Plaintiff's knowledge and understanding, the HCJ intake staff recognized that Mr. Pomani's blood sugar test result was outside of the normal range and attempted to consult with Nurse Lowitz.  It was discovered that she had left the HCJ facility for the day, so HCH staff eventually located her by telephone and reported Mr. Pomani's blood sugar test results.

30. To the best of the Plaintiff's knowledge and understanding, Nurse Lowitz advised that she would come in to evaluate Mr. Pomani's medical condition the following Monday. She did not approve any further medical treatment or the distribution of his prescribed medications.

31. To the best of Plaintiff's knowledge and understanding, Mr. Pomani complained of increasing discomfort while in custody at HCJ between July 13 and July 16, 2018.

32. To the best of the Plaintiff's knowledge and understanding, the HCJ correctional officers who were on duty and supervising Mr. Pomani over the weekend became increasingly concerned that he was having a serious medical issue from what they could observe about his physical condition.

33. To the best of the Plaintiff's knowledge and understanding, during the course of the weekend, HJC correctional officers made repeated calls to Nurse Lowitz about Mr. Pomani's concerning medical symptoms and medications.

34. To the best of the Plaintiff's knowledge and understanding, Nurse Lowitz' repeated response was that she would be there "on Monday" to evaluate Mr. Pomani.  She did not approve any further medical treatment or the distribution of his prescribed medications.

35. To the best of the Plaintiff's knowledge and understanding, Nurse Lowitz did not come to the jail to evaluate or assess Mr. Pomani's medical needs, refer staff to seek Nurse Cox's assessment or approval for medical distribution,  or otherwise instruct HCJ about how to address Mr. Pomani's medical condition or medications.

36. To the best of Plaintiff's knowledge and understanding, pursuant to the medical chain of command, HCJ staff was not authorized to contact Nurse Cox even if they disagreed with Nurse Lowitz' assessment that Mr. Pomani did not need medication or medical attention until Monday.

37. To the best of Plaintiff's knowledge and understanding, by Sunday July 16, HCJ correctional officers on its day shift observed that Mr, Pomani was suffering from physical symptoms including sweating, vomiting and nausea.  HCJ staff administered another blood sugar test and took Mr. Pomani's blood pressure.  At that time, the HCJ equipment used to measure blood sugar did not register blood sugar results above 600, and thus the policy was to record such results as "high."   HCJ correctional staff found that Mr. Pomani's blood sugar registered "high" and that his blood pressure had dropped from a  previous blood pressure test.

38.  To the best of the Plaintiff's knowledge and understanding, several members of the HCJ correctional staff day shift duty on July 16 became concerned about Mr. Pomani's deteriorating physical condition after his blood sugar registered as "high," that a group of them gathered while one of them made another phone call to Nurse Lowitz to report what they believed were Mr. Pomani's concerning medical test results and declining  physical condition.

39. To the best of the Plaintiff's knowledge and understanding, Nurse Lowitz' response to this phone call was that there was nothing that she could do and that Mr. Pomani would be fine until Monday, when she planned to come to HCJ to assess him.

40. To the best of the Plaintiff's knowledge and understanding, Nurse Lowitz did not approve the distribution of Mr. Pomani's prescribed medication or refer him to further evaluation or care.

41. Early in the morning of Monday July 17, 2018, HCJ's members of night staff discovered Mr. Pomani unresponsive in his cell.

42. On July 17, 2018, Mr. Pomani was ultimately transferred to Avera Hospital in Sioux Falls, South Dakota.  Mr. Pomani remained unresponsive until his death the following day.  The history provided to his physician was that he had been found at 6:00 am that day after a 3-4 day history of nausea and vomiting.

43. On July 18, 2018, after consultation with Mr. Pomani's family about his poor prognosis, Mr. Pomani suffered a cardiac arrest and died from an anoxic brain injury, diabetic ketoacidosis and insulin dependent diabetes mellitus.

## COUNT ONE
### CIVIL RIGHTS VIOLATION OF 42 U.S.C. § 1983
### Defendants Lowitz, Cox, Dodge, Leidholt and Does 1-5

44. Plaintiff re-alleges and incorporates by reference ¶¶ 1- 43 above.

45. At all times during Mr. Pomani's incarceration in Hughes County's jail, the above-named Defendants had a duty under the 8th Amendment and the 14th Amendment to the United States Constitution to protect Mr. Pomani from the wanton infliction of unnecessary pain and deliberate indifference to his medical needs. Their duty includes the obligation to protect Mr.

Pomani from the intentional denial or delay of access to medical and additional interference with treatment once prescribed.

46. The Defendants were at all times relevant acting under the color of law and under the color of authority as correctional officers, employees, agents and servants of Hughes County.

47. Mr. Pomani had objectively serious medical needs.

48. Mr. Pomani's medical needs were diagnosed by a physician and were both known and obvious to Defendant Lowitz and HCJ staff, in part because he had been previously incarcerated at HCJ and in part because he was transferred into HCJ custody with prescription medications, and he had an abnormal medical finding when his blood sugar was taken by HCJ intake staff on July 13, 2018.

49. Defendants Lowitz and Does 1-5 knew of and disregarded Mr. Pomani's serious medical needs even though they were known to them or became obvious during the weekend that he was incarcerated as his physical condition declined.

50. Defendants Lowitz and Does 1-5 recognized that a substantial risk of harm existed if Mr. Pomani did not receive his prescribed medications or further medical evaluation and treatment,

51. Defendants Lowitz and Does 1-5 inactions, failures and delays amounted to a deliberate indifference for Mr. Pomani's serious medical needs and constitute violations of his civil rights under the 8th and 14th Amendments.

52. Defendants Cox, Dodge and Leidholt approved, trained staff about and enforced policies that allowed Nurse Lowitz and other staff to delay or interfere with the distribution of prescribed medications and inmates' rights to have medical care by instructing staff that staff had

to abide by Nurse Lowitz' instructions about denial or delay in medication distribution or further care.

53. Defendants Cox, Dodge and Leidholt Defendants knew of and disregarded Mr. Pomani's serious medical needs even though they were known to them or became obvious during the weekend that he was incarcerated as his physical condition declined.

54. HCJ staff documented Mr. Pomani's condition and brought it to the attention of Nurse Lowitz.

55. Defendants Cox, Dodge and Leidholt recognized that a substantial risk of harm existed if staff complied with their directives about medical care, and that this could result in Mr. Pomani being delayed on denied prescribed medications or further medical evaluation and treatment.

56. Defendants Cox, Dodge and Leidholt Defendants Lowitz and Does 1-5 inactions, failures and delays amounted to a deliberate indifference for Mr. Pomani's serious medical needs and constitute violations of his civil rights under the 8th and 14th Amendments.

57. As a result of the deliberate actions and inaction described above, Plaintiff claims damages under 42 U.S.C. § 1983 for Mr. Pomani's injuries, pain and suffering as allowed by SDCL § 21-5-2.

58. As a result of the deliberate actions and inaction described above, Plaintiff claims damages under 42 U.S.C. § 1983 for Mr. Pomani's wrongful death and the loss of his companionship, support, aid, advice and assistance as allowed by SDCL § 21-5-1.

COUNT II
**CIVIL RIGHTS VIOLATION OF 42 U.S.C. § 1983**
**Defendant Hughes County, South Dakota**

59. Plaintiff re-alleges and incorporates by reference in ¶¶ 1-45 above.

60. Prior to July 13, 2018,  Hughes County developed and enforced policies and customs that exhibited deliberate indifference to the constitutional rights of Mr. Pomani while he was in HCJ custody.

61. Hughes County was aware that it is under an obligation to provide Mr. Pomani with adequate medical care.

62. The rights of inmates with diabetes to have access to medication while in custody was established at the time of Mr. Pomani's incarceration at HCJ.

63. At all times relevant to this Complaint, it was the policy and custom of Hughes County to fail to train its jail staff about the obligation to provide prescribed medications and medical care. thereby failing to adequately prevent the constitutional violations of Mr. Pomani's rights by its correctional employees.

64.    At all times relevant to this Complaint, it was the policy and custom of Hughes County was to allow Nurse Lowitz personal schedule to dictate whether prisoners where subject to delay or denial of prescription medications and reasonable medical care, thereby failing to adequately prevent the constitutional violations of Mr. Pomani's rights by its correctional employees.

65.   The above-described policies and customs demonstrate a deliberate indifference on the part of Hughes County to Mr. Pomani's constitutional rights and were the cause of the violations to those rights as alleged herein.

66. Mr. Pomani experienced conscious pain and suffering and died from injuries sustained as a direct and proximate result of the Defendants' actions, failures and delays in providing reasonable medical care for him.

11

67. As a result of the deliberate actions and inaction described above, Plaintiff claims damages under 42 U.S.C. § 1983 for Mr. Pomani's injuries, pain and suffering as allowed by SDCL § 21-5-2.

68. As a result of the deliberate actions and inaction described above, Plaintiff claims damages under 42 U.S.C. § 1983 for Mr. Pomani's wrongful death and the loss of his companionship, support, aid, advice and assistance as allowed by SDCL § 21-5-1.

**WHEREFORE, PLAINTIFF VALERIE ESTES, AS THE SPECIAL ADMINISTRATOR OF THE ESTATE OF SERYL LEROY POMANI, PRAYS FOR THE FOLLOWING RELIEF:**

1. For judgment in favor of Plaintiff declaring that the acts and omissions of the Defendants were unconstitutional and a violation of Mr. Pomani's rights under the 8th and 14th Amendments to the United States Constitution and Article VI, § 23 of the Constitution of the State of South Dakota;

2. For judgment in favor of Plaintiff and against the Defendants, jointly and severally, in a monetary amount to be proven at trial to compensate the Plaintiff for the Defendants' violation of Mr. Pomani's constitutional rights in such sum as he would have recovered for his pain and suffering if he had survived, including all expenses related to his medical care, death and burial;

3. For judgment in favor of Plaintiff and against the Defendants, jointly and severally, in a monetary amount to be proven at trial to compensate the Plaintiff for Defendants' violation of Mr. Pomani's constitutional rights in such sum as will fairly compensate his surviving family for the permanent loss of his companionship, support, aid, advice and assistance;

4.  For punitive damages as allowed by law;

5.  For Plaintiff's costs and disbursements as allowed by law, including reasonable

    attorney fees pursuant to 42 U.S.C.A. § 1983; and

6.  For such other relief as deemed just and equitable by the Court.

### DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury upon these claims pursuant to F.R.C.P. 38(a).

Dated this 17th day of July,  2020.

JOHNSON POCHOP & BARTLING
LAW OFFICE, LLP

Stephanie E. Pochop
P.O. Box 149 | 405 Main St.
Gregory, South Dakota 57533
(605) 835-8391
Stephanie@rosebudlaw.com
*Attorneys for Plaintiff Valerie Estes*

JS 44 (Rev. 09/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Valerie Estes, Special Administrator for the Estate of Seryl Leroy Pomani

**(b)** County of Residence of First Listed Plaintiff    Todd County, SD
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Stephanie Pochop, Johnson Pochop & Bartling Law Office, LLP
PO Box 149, Gregory, SD  57533

## DEFENDANTS

Hughes County, South Dakota, Jaclyn Lowitz, Julie Cox, Bill Dodge, Mike Leidholt

County of Residence of First Listed Defendant    Hughes County, SD
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government
      Plaintiff

☐ 2  U.S. Government
      Defendant

☒ 3  Federal Question
      *(U.S. Government Not a Party)*

☐ 4  Diversity
      *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                          *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☒ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | 3729(a)) |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
| Student Loans | ☐ 340 Marine | Injury Product | | New Drug Application | ☐ 470 Racketeer Influenced and |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | | ☐ 840 Trademark | Corrupt Organizations |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | (15 USC 1681 or 1692) |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | Act | ☐ 862 Black Lung (923) | Protection Act |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | Relations | ☐ 864 SSID Title XVI | ☐ 850 Securities/Commodities/ |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | Exchange |
| | ☐ 362 Personal Injury - | Product Liability | ☐ 751 Family and Medical | | ☐ 890 Other Statutory Actions |
| | Medical Malpractice | | Leave Act | | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement | ☐ 870 Taxes (U.S. Plaintiff | ☐ 895 Freedom of Information |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | Income Security Act | or Defendant) | Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | 26 USC 7609 | ☐ 899 Administrative Procedure |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | | Act/Review or Appeal of |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | | Agency Decision |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | State Statutes |
| | Other | ☒ 550 Civil Rights | Actions | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1  Original
      Proceeding

☐ 2  Removed from
      State Court

☐ 3  Remanded from
      Appellate Court

☐ 4  Reinstated or
      Reopened

☐ 5  Transferred from
      Another District
      *(specify)*

☐ 6  Multidistrict
      Litigation -
      Transfer

☐ 8  Multidistrict
      Litigation -
      Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 USCA 1983
Brief description of cause:
Civil rights denial from delay and denial of medical care for pretrial detainee

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
   UNDER RULE 23, F.R.Cv.P.

DEMAND $
*to be delined by jury*

CHECK YES only if demanded in complaint:
JURY DEMAND:    ☒ Yes    ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE

DOCKET NUMBER

DATE
07/17/2020

SIGNATURE OF ATTORNEY OF RECORD

### FOR OFFICE USE ONLY

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE