UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH DAKOTA
CENTRAL DIVISION

| | |
|---|---|
| VALERIE ESTES, as the Special Administrator of the ESTATE OF SERYL LEROY POMANI, <br><br> Plaintiff, <br><br> vs. <br><br> HUGHES COUNTY, SOUTH DAKOTA, JACLYN LOWITZ, JULIE COX, BILL DODGE, MIKE LEIDHOLT and DEFENDANT DOES 1-5, all in their individual and official capacities, <br><br> Defendants. | 3:20-cv-03013-KES <br><br><br><br> **AMENDED COMPLAINT WITH REQUEST FOR TRIAL BY JURY** |

COMES NOW Plaintiff Valerie Estes, as the Special Administrator of the Estate of Seryl Leroy Pomani, and pursuant to F.R.Civ. P. 15(a)(1)(A), for her Amended Complaint filed against the above-named Defendants, states and alleges the following claims:

## <u>JURISDICTION AND VENUE</u>

1. This Court has jurisdiction over this action under 42 U.S.C.A. § 1983 pursuant to 28 U.S.C.A. §§ 1331 and 1343.

2. This Court has supplemental jurisdiction over the Plaintiff's state law claims in Counts IV, V and VI pursuant to 28 U.S.C.A. § 1367(a).

3. Pursuant to 42 U.S.C.A. § 1988, this Court has jurisdiction over Plaintiff's requests for reasonable attorney fees and litigation costs if Plaintiff is a prevailing party.

4. Plaintiff's cause of action arose in Hughes County, South Dakota. Venue in this Court is proper under 28 U.S.C.A. § 1391(b).

1

**PARTIES**

5.   Seryl Pomani ("Mr. Pomani") was an adult male resident of Rosebud, South Dakota who died on July 18, 2018 after being denied reasonably adequate medical care while in the custody of the Defendants in the Hughes County Jail between July 13, 2018 and July 16, 2018.

6.   Mr. Pomani is survived by a minor child L.P. and several siblings.

7.   Valerie Estes ("Plaintiff") is Mr. Pomani's adult sister residing in Rosebud, South Dakota, and has been appointed as the Special Administrator of the Seryl Leroy Pomani Estate by the Hon. William T. Bossman of the Rosebud Sioux Tribal Court for the purpose of pursuing this action.

8.   Defendant Hughes County is a duly incorporated county in South Dakota.  As such, it is a  governmental entity and local public body as defined by SDCL § 24-11-2, which sets forth that "[t]here shall be established and maintained in every county, by authority of the board of county commissioners and at the expense of the county, a jail for the purpose stated in this chapter, except as provided in [SDCL] § 24-11-3."

9.   At all times relevant to this action, Defendant Hughes County operated the Hughes County Jail ("HCJ").  Hughes County is responsible to develop, implement and enforce policies and procedures that are sufficient to provide for reasonably adequate medical care for the inmates in its custody at the HCJ.

10. Defendant Hughes County has a statutory obligation to appropriate sufficient funds to operate its jail facility for the incarceration of prisoners under the jurisdiction of the county.

11. At all times relevant to this action, Defendant Jaclyn Lowitz  ("Nurse Lowitz," also known as Jaclyn Houghtaling) was an adult resident of South Dakota and who was employed by

Hughes County as the HCJ Jail Nurse in July 2018.  Unless otherwise specifically stated in this action, Nurse Lowitz is sued in her individual capacity.

12. At all times relevant to this action, Defendant Julie Cox ("Nurse Cox") was a South Dakota Nurse Practitioner associated with the Avera healthcare system who was providing medical "outreach" for the HCJ and was identified to HCJ staff as Nurse Lowitz' supervisor in July 2018.  Unless otherwise specifically stated in this action, Nurse Cox is sued in her individual capacity

13. At all times relevant to this action, Bill Dodge ("Mr. Dodge") was an adult resident of South Dakota who was employed by Hughes County as its Jail Administrator.  In this capacity he was responsible for the supervision of jail staff, the creation, implementation and enforcement of jail policies and was also responsible for the supervision, protection and control of the inmates in the HCJ, including providing for the inmates' serious medical needs.  Unless otherwise specifically stated in this action, Mr. Dodge is sued in his individual capacity.

14. To the best of the Plaintiff's knowledge, Mr. Dodge and Nurse Cox are domestic partners.

15. At all times relevant to this action, Mike Leidholt ("Sheriff Leidholt," for the purposes of this action) was an adult resident of South Dakota who was employed by Hughes County as its Sheriff.  In this capacity he was responsible for the supervision of jail staff, the enforcement of jail policies and was also responsible for the supervision, protection and control of the inmates in the HCJ, including providing for the inmates' serious medical needs.  Unless otherwise specifically stated in this action, Sheriff Leidholt is sued in his individual capacity.

16. At all times relevant to this action, Defendant Does 1-5 were employees of Hughes County in the Hughes County Jail in July 2018 and who, while on duty, were responsible for the

supervision, protection and control of the inmates in the Hughes County Jail, including providing for the inmates' serious medical needs.  Unless otherwise specifically stated in this action, these individuals are sued in their individual capacity.

## FACTUAL ALLEGATIONS

17. Hughes County contracts with and is paid by the US Marshals Service, as well as other counties and entities, to provide custodial care for adults who are committed to custody through judicial order.

18.  Hughes County is responsible for the operation of the Hughes County Jail, including providing for the safety, health care and serious medical needs of its inmates; the hiring, qualifications, supervision and training of its staff; the development and approval of policies and procedures so that inmates are not subject to excessive risk to their health or safety while in custody; and administrating the jail facility in compliance with federal and state safety laws and regulations to assure that inmates are not subject to excessive risk to their health or safety while in custody.

19. At all times relevant to the claims asserted in this Complaint and to the best of Plaintiff's knowledge and understanding, Hughes County employs a Jail Nurse who is directly responsible to supervise to assess and address inmates' safety, health care and serious medical needs, and to train staff attending to inmates' health,  a duty which includes the responsibility to advise and direct the Jail's correctional officers about how and when to provide medical care for inmates even if the Jail Nurse is not personally present.

20.  At all times relevant to the claims asserted in this Complaint and to the best of Plaintiff's knowledge, HCJ policy in July 2018 required that no inmate could be administered medication or medical care without the approval of Nurse Lowitz.

4

21.  At all times relevant to the claims asserted in this Complaint and to the best of Plaintiff's knowledge, HCJ policy in July 2018 required its correctional staff to follow a chain of command to obtain medical care for inmates, namely, that staff had to get approval from Nurse Lowitz to seek further care.  If Nurse Lowitz could not be contacted, staff was to contact Nurse Cox to approve further care.  Only in the event of an obvious emergency was staff to call for emergency care without pre-approval, such as if an inmate was "bleeding out."

22.  At all times relevant to the claims asserted in this Complaint and to the best of Plaintiff's knowledge, Mr. Dodge and Sheriff Leidholt made it clear to HCJ's correctional staff that failure to follow this medical chain of command and abide by the nurses' directives would subject the staff members to potential disciplinary action.

23.  All times relevant to the claims asserted in this Complaint and to the best of Plaintiff's knowledge,  Nurse Lowitz  was a registered nurse and was aware of her duties and responsibilities to approve the distribution of prescribed and over the counter medications to HCJ inmates, to assess, evaluate and treat HCJ inmates for their need for further treatment, as well as her responsibilities to address and to direct correctional staff regarding inmates' medical care and treatment.

24.  As the Jail Nurse, Nurse Lowitz assumed a duty of care for Mr. Pomani's  medical needs while he was in custody at HCJ.

25.  All times relevant to the claims asserted in this Complaint and to the best of Plaintiff's knowledge and understanding, Nurse Cox  was a registered nurse and was aware of her duties and responsibilities to oversee and approve the distribution of prescribed and over the counter medications to HCJ inmates, to assess, evaluate and treat HCJ inmates for their need for

further treatment, as well as her responsibilities to address and to direct Nurse Lowitz and other correctional staff regarding inmates' medical care and treatment.

26.   As the Jail's outreach nurse, Nurse Cox assumed a duty of care for Mr. Pomani's medical needs while he was in custody at HCJ.

27.   At all times relevant to the claims asserted in this Complaint, Defendant Does 1-5 were correctional officers and staff members at HCJ who were responsible to address Mr. Pomani's safety, health care and serious medical needs while he was in HCJ custody.

28.   In June 2018, Mr. Pomani was indicted on allegations related to third degree burglary and larceny.  A warrant was issued for his arrest on these charges.

29.   On July 13, 2018, Mr. Pomani was taken into the custody by the US Marshals Service.

30.   Pursuant to its contract with the US Marshals Service, Mr. Pomani was transferred to and incarcerated at HCJ as a pretrial detainee on Friday, July 13, 2018.

31.   At that time on his July 13 detention at HCJ, Mr. Pomani had a documented medical history of several serious, chronic medical conditions, including Type 1 diabetes, diabetic neuropathy, asthmas, hypertension, hyperlipidemia, PTSD, and major depression. He was prescribed various medications for these conditions, including insulin.

32. Prior to July 2018, Mr. Pomani previously had been detained at HCJ so in July 2018, HCJ staff, including and Nurse Lowitz, were familiar with Mr. Pomani, including the fact that he had a complicated medical history and took medications.

33.   To the best of the Plaintiff's knowledge and understanding, the US Marshal who delivered Mr. Pomani into custody also delivered Mr. Pomani's prescription medications to the HCJ intake staff.

6

34. To the best of the Plaintiff's knowledge and understanding, to be able to dispense Mr. Pomani's medications during his incarceration, HCJ staff had to obtain the approval of Nurse Lowitz or Nurse Cox.

35. To the best of the Plaintiff's knowledge and understanding, Nurse Lowitz was not at work when Mr. Pomani was booked into the Hughes County Jail because she was camping at a recreational area approximately 5 miles away from the jail.

36. To the best of the Plaintiff's knowledge and understanding, during the intake booking process, the HCJ intake officer did an initial check of Mr. Pomani's blood sugar and Mr. Pomani's blood sugar registered between 350 and 400.

37. To the best of the Plaintiff's knowledge and understanding, the HCJ intake staff recognized that Mr. Pomani's blood sugar test result was outside of the normal range and attempted to consult with Nurse Lowitz. Because she had left the HCJ facility for the day, HCH staff eventually located her by telephone and reported Mr. Pomani's blood sugar test results.

38. To the best of the Plaintiff's knowledge and understanding, Nurse Lowitz recognized Mr. Pomani's name during this call because she and Mr. Pomani had engaged in a dispute about Mr. Pomani's medical needs when Mr. Pomani had been in the facility on a prior custodial hold.

39. To the best of the Plaintiff's knowledge and understanding, Nurse Lowitz advised HCJ staff that she would come in to evaluate Mr. Pomani's medical condition the following Monday. She did not approve any further medical treatment or the distribution of his prescribed medications.

40. To the best of Plaintiff's knowledge and understanding, Mr. Pomani complained of increasing discomfort while in custody at HCJ between July 13 and July 16, 2018.

41.  To the best of the Plaintiff's knowledge and understanding, the HCJ correctional officers who were on duty and supervising Mr. Pomani over the weekend became increasingly concerned that he was having a serious medical issue from what they could observe about his physical condition.

42. To the best of the Plaintiff's knowledge and understanding, during the course of the weekend, HJC correctional officers made repeated calls to Nurse Lowitz about Mr. Pomani's concerning medical symptoms and medications.

43. To the best of the Plaintiff's knowledge and understanding, Nurse Lowitz repeatedly responded that she would be there "on Monday" to evaluate Mr. Pomani.  She did not  approve any further medical treatment or the distribution of his prescribed medications. She did not direct HCJ to call another medical provider or nurse, or direct them to call emergency medical professionals, or direct them to take Mr. Pomani to the hospital.

44.  To the best of the Plaintiff's knowledge and understanding, Nurse Lowitz did not come to the jail to evaluate or assess Mr. Pomani's medical needs, refer staff to seek Nurse Cox's assessment or approval for medical distribution, or otherwise instruct HCJ about how to address Mr. Pomani's medical condition or medications.

45. To the best of Plaintiff's knowledge and understanding, pursuant to the medical chain of command, HCJ staff was not authorized to contact Nurse Cox even if they disagreed with Nurse Lowitz' assessment that Mr. Pomani did not need medication or medical attention until Monday.

46. To the best of Plaintiff's knowledge and understanding, by Sunday July 16, HCJ correctional officers on its day shift observed that Mr, Pomani was suffering from physical symptoms including sweating, vomiting and nausea.  HCJ staff administered another blood sugar

test and took Mr. Pomani's blood pressure.  At that time, the HCJ equipment used to measure blood sugar did not register blood sugar results above 600, and thus the policy was to record such results as "high."   HCJ correctional staff found that Mr. Pomani's blood sugar registered "high" and that his blood pressure had dropped from a  previous blood pressure test.

47.  To the best of the Plaintiff's knowledge and understanding, several members of the HCJ correctional staff day shift duty on July 16 became so concerned about Mr. Pomani's deteriorating physical condition after his blood sugar registered as "high," that a group of them gathered while one of them made another phone call to Nurse Lowitz to report what they believed were Mr. Pomani's concerning medical test results and declining  physical condition.

48. To the best of the Plaintiff's knowledge and understanding, Nurse Lowitz responded to this phone call by saying that there was nothing that she could do and that Mr. Pomani would be fine until Monday when she planned to come to HCJ to assess him.

49. To the best of the Plaintiff's knowledge and understanding, Nurse Lowitz did not approve the distribution of Mr. Pomani's prescribed medication or refer him to further evaluation or care.

50. To the best of the Plaintiff's knowledge and understanding, no one on HCJ staff provided Mr. Pomani with his medication or referred him to further evaluation or care.

51. Early in the morning of Monday July 17, 2018, members of HCJ's night staff discovered Mr. Pomani unresponsive in his cell.

52. On July 17, 2018, Mr. Pomani was ultimately transferred to Avera Hospital in Sioux Falls, South Dakota.  Mr. Pomani remained unresponsive until his death the following day.  The history provided to his physician was that he had been found at 6:00 am that day after a  3-4 day history of nausea and vomiting.

53.  On July 18, 2018, after consultation with Mr. Pomani's family about his poor prognosis, Mr. Pomani suffered a cardiac arrest and died from an anoxic brain injury, diabetic ketoacidosis and insulin dependent diabetes mellitus.

54.  To the best of the Plaintiff's knowledge and understanding, some HCJ log notes regarding the calls made to Nurse Lowitz from HCJ staff went missing after Mr. Pomani's transfer to the hospital.

55.  To the best of the Plaintiff's knowledge and understanding, Nurse Lowitz was permitted to resign her position at HCJ without disciplinary action in September 2018 even though her actions were in violation of both Hughes County policy and procedure and the recognized standard of care required of licensed registered nurses in South Dakota.

56.  To the best of the Plaintiff's knowledge and understanding, Nurse Cox was not subject to disciplinary action by HCJ even though her actions were in violation of both Hughes County policy and procedure and the recognized standard of care required of licensed registered nurses in South Dakota.

**COUNT I**
**CIVIL RIGHTS VIOLATION OF 42 U.S.C. § 1983**
**All Defendants**

57.  Plaintiff re-alleges and incorporates by reference the allegations in ¶¶ 1-56 above.

58.  Mr. Pomani, under the due process clause of the Fourteenth Amendment, had the same rights as a pre-trial detainee and convicted inmates under the Eighth Amendment of the United States Constitution.

59.  At all times during Mr. Pomani's incarceration a the HCJ, the Defendants had a duty under the 8th Amendment and the 14th Amendment to the United States Constitution to protect Mr. Pomani from the wanton infliction of unnecessary pain and deliberate indifference to his

medical needs. Their duty includes the obligation to protect Mr. Pomani from the intentional denial or delay of access to medical and additional interference with treatment once prescribed.

60. The Defendants were at all times relevant acting under the color of law and under the color of authority as correctional officers, employees, agents and servants of Hughes County.

61. Mr. Pomani had objectively serious medical needs.

62. Mr. Pomani's medical needs were diagnosed by a physician and were both known and obvious to Defendant Lowitz and HCJ staff, in part because he had been previously incarcerated at HCJ and in part because he was transferred into HCJ custody with prescription medications, and because he had an abnormal medical finding when his blood sugar was taken by HCJ intake staff and throughout his incarceration at the HCJ.

63. Defendants Lowitz, Cox and Does 1-5 knew of and disregarded Mr. Pomani's serious medical needs even though they were known to them or became obvious during the weekend that he was incarcerated as his physical condition declined.

64. Defendants Lowitz, Cox and Does 1-5 recognized that a substantial risk of harm existed if Mr. Pomani did not receive his prescribed medications or further medical evaluation and treatment,

65. Defendants Lowitz, Cox and Does' 1-5 inactions, failures and delays amounted to a deliberate indifference for Mr. Pomani's serious medical needs and constitute violations of his civil rights under the 8th and 14th Amendments.

66. Defendants Lowitz, Cox, Dodge and Leidholt enforced policies that allowed Nurse Lowitz and other staff to delay or interfere with the distribution of prescribed medications and inmates' rights to have medical care by instructing staff that staff had to abide by Nurse Lowitz' instructions about when Mr. Pomani would receive care and treatment.

67. Defendants knew of and disregarded Mr. Pomani's serious medical needs even though they were known to them or became obvious during the weekend while he was incarcerated as his physical condition obviously declined.

68. Some members of HCJ staff documented Mr. Pomani's condition and brought it to the attention of Nurse Lowitz.

69. Defendants Lowitz, Cox, Dodge and Leidholt recognized that a substantial risk of harm existed if staff complied with their directives about delaying medical care, and that this could result in Mr. Pomani being denied prescribed medications or necessary medical evaluation and treatment.

70. Defendants failures and delays amounted to a deliberate indifference for Mr. Pomani's serious medical needs and constitute violations of his civil rights under the 8th and 14th Amendments.

71. As a result of the deliberate actions and inaction described above, Plaintiff claims damages under 42 U.S.C.A. § 1983 for Mr. Pomani's injuries, pain and suffering as allowed by SDCL § 21-5-2.

72. As a result of the deliberate actions and inaction described above, Plaintiff claims damages under 42 U.S.C.A. § 1983 for Mr. Pomani's wrongful death and the loss of his companionship, support, aid, advice and assistance as allowed by law.

73. As a result of the deliberate actions and inaction described above, Plaintiff claims damages for Mr. Pomani's loss of chance of survival.

## COUNT II
### CIVIL RIGHTS VIOLATION OF 42 U.S.C. § 1983
### Defendant Hughes County, South Dakota

74. Plaintiff re-alleges and incorporates by reference the allegations in ¶¶ 1-73 above.

75. Prior to July 13, 2018,  Hughes County developed and enforced policies and customs that exhibited deliberate indifference to the constitutional rights of Mr. Pomani while he was in HCJ custody.

76. Hughes County was aware that it is under an obligation to provide Mr. Pomani with adequate medical care.

77.  The rights of inmates with diabetes to have access to their medication while in custody was established at the time of Mr. Pomani's incarceration at HCJ.

78. At all times relevant to this Complaint, it was the policy and custom of Hughes County to fail to train its jail staff about the obligation to provide prescribed medications and medical care, including emergency medical care,  thereby failing to adequately prevent the constitutional violations of Mr. Pomani's rights by its correctional employees.

79.   At all times relevant to this Complaint, it was the policy and custom of Hughes County to allow its medical staff's personal schedules to dictate whether prisoners where subject to delay or denial of prescription medications, reasonable medical care or emergency care, thereby failing to adequately prevent the constitutional violations of Mr. Pomani's rights by its correctional employees.

80.   The above-described policies and customs demonstrate a deliberate indifference on the part of Hughes County to Mr. Pomani's constitutional rights and were the cause of the violations to those rights as alleged in this Complaint.

81. Mr. Pomani experienced conscious pain and suffering and died from injuries sustained as a direct and proximate result of the Defendants' actions, failures and delays in providing reasonable medical care for him.

13

82.  As a result of the deliberate actions and inaction described above, Plaintiff claims damages under 42 U.S.C.A. § 1983 for Mr. Pomani's  injuries, pain and suffering as allowed by law.

83.  As a result of the deliberate actions and inaction described above, Plaintiff claims damages under 42 U.S.C.A. § 1983 for Mr. Pomani's wrongful death and the loss of his companionship, support, aid, advice and assistance as allowed by law.

84. As a result of the deliberate actions and inaction described above, Plaintiff claims damages for Mr. Pomani's loss of chance of survival.

## COUNT III
### FOURTEENTH AMENDMENT EQUAL PROTECTION VIOLATIONS
### All Defendants

85.  Plaintiff re-alleges and incorporates by reference the allegations in ¶¶ 1-84 above.

86. The Fourteenth Amendment of the United States Constitution affords equal protection of the law and prohibits discrimination on the basis of race.

87. Racial profiling or stereotyping is discrimination based on race.

88. Race is a suspect classification and any discrimination on the basis thereof should be afforded the strictest scrutiny.

89. To the best of Plaintiff's information and understanding, Defendant Jaclyn Lowitz racially profiled and/or stereotyped and discriminated against Plaintiff on the basis of his race.

90. Defendants Hughes County, Mike Leidholt, Bill Dodge and Julie Cox are vicariously liable for Defendant Lowitz's discriminatory treatment of Mr. Pomani because of his race.

91. Defendants violated Plaintiff's Fourteenth Amendment right to be free of racial discrimination.

14

92. To the best of Plaintiff's information and understanding, the individually named Defendants failed to intervene in the unconstitutional acts alleged in this Complaint.

93.  As a direct and proximate result of the Defendants' discriminatory conduct as alleged in this Complaint, Mr. Pomani suffered and died.

94. As a result of the deliberate actions and inaction described above, Plaintiff claims damages for Mr. Pomani's injuries, pain and suffering as allowed by  law.

95.  As a result of the deliberate actions and inaction described above, Plaintiff claims damages for Mr. Pomani's wrongful death and the loss of his companionship, support, aid, advice and assistance as allowed by law.

96.  As a result of the deliberate actions and inaction described above, Plaintiff claims damages for Mr. Pomani's loss of chance of survival.

97.  Defendants' conduct was willful, wanton, malicious, and in utter disregard and indifference for Mr. Pomani's legal rights, warranting the imposition of punitive damages.

### COUNT IV
### BREACH OF CONTRACT
**Defendants Hughes County, Bill Dodge, Mike Leidholt, Julie Cox &  Jaclyn Lowitz**

98. Plaintiff re-alleges and incorporates by reference the allegations in ¶¶ 1-97 above.

99. To the best of the Plaintiff's knowledge and understanding, Hughes County contracted with Jail Administrator Bill Dodge and/or Sheriff Mike Leidholt to run and operate the HCJ and to provide medical services to inmates at the HCJ.

100. To the best of the Plaintiff's knowledge and understanding, Nurse Lowitz and Nurse Cox were under contract with Hughes County to provide medical services to inmates at the HCJ.

101. To the best of the Plaintiff's knowledge and understanding, the contracts as alleged in this Complaint mandated that Hughes County will abide by all laws and regulations of the

state and the federal governments in the operation of the HCJ.

102.  Mr. Pomani is a third-party beneficiary of the contracts as alleged in this Complaint.

103.  Defendants owed Mr. Pomani a duty to abide by its contract.

104.  To the best of the Plaintiff's knowledge and understanding, Defendants breached their duty to Mr. Pomani when the laws and regulations of the state and federal government as well as County policies and procedures were violated to the detriment and harm of Mr. Pomani as alleged in this Complaint.

105.  To the best of the Plaintiff's knowledge and understanding,  Hughes County failed to maintain proper staffing levels at the HCJ.

106.  To the best of the Plaintiff's knowledge and understanding,  Hughes County failed to provide adequate staff training regarding providing for HCJ inmates' medical needs at the HCJ.

107.  Defendants had a duty to provide for adequate medical services for the inmates at the HCJ.

108.  Defendants breached their duty to provide medical services to inmates, including but not limited to Mr. Pomani, at the HCJ as alleged in this Complaint.

109.  Defendants breached several aspects of their contract that were significant in how medical care was provided to Mr. Pomani and other inmates, including but not limited to:

   a.  By failing to provide adequate staff training about how to address the medical needs of inmates including Mr. Pomani;

   b.  By failing to maintain adequate staffing to address the medical needs of inmates including Mr. Pomani;

   c.  By allowing numbers of inmates that resulted in inadequate care of the inmates

housed at the facility;  and

    d.  By violating Mr. Pomani's federal and state rights as set forth herein.

110.  As a result proximate result of Defendants' breach, Mr. Pomani suffered damages including loss of chance, loss of enjoyment of life, hedonic damages, pain and suffering, and mental and emotional trauma, and death.

## COUNT V
## NEGLIGENCE
**All Defendants**

111.  Plaintiff re-alleges and incorporates by reference the allegations in ¶¶ 1-110 above.

112.  Defendants each owed Mr. Pomani a duty of care to provide reasonably adequate medical care and treatment, including prescribed medications, to him while he was in their custody at the HCJ.

113.  To the best of the Plaintiff's knowledge and understanding, the HCJ was understaffed for its inmate population, which lead to inadequate care of Mr. Pomani when he was in custody at the HCJ.

114.  Defendants breached their duty of care to Mr. Pomani by failing to recognize, treat, and evaluate Mr. Pomani's medical condition and his  emergency medical condition in direct contradiction to their duties.

115.  The Defendants' negligence was reckless, willful, wanton, and in callous disregard of Mr. Pomani's healthcare needs.

116.  To the  best of the Plaintiff's knowledge and understanding,  Mr. Pomani's treatment by Defendants was part of a continuing pattern by Defendants to willfully and deliberately ignore the medical needs of inmates in custody at the HCJ.

117. Defendants Hughes County, Bill Dodge, Julie Cox, Jacklyn Lowitz and Mike

Leidholt are liable for the acts of their contractors and employees.

118.  Such conduct is the result of customs and practices of Defendants, either written or unwritten, that are systematically applied to all persons who exhibit serious medical conditions, including emergency medical conditions, while incarcerated at the HCJ.  Such practices constitute an arbitrary use of government power, and evince a total, intentional, deliberate and unreasonable disregard for and indifference to the lives and constitutional and common law rights of Mr. Pomani and other inmates at the HCJ, and the wholesale violations of those rights likely to result from the regular and systematic pursuit of such practices.

119.  As a proximate result of Defendants' breach of duty, Mr. Pomani's suffered and died, causing the damages to him and to is Estate as alleged in this Complaint.

**COUNT VI**
**NEGLIGENT NURSING CARE AND TREATMENT**
**Defendants Cox and Lowitz**

120.  Plaintiff re-alleges and incorporates by reference the allegations in ¶¶ 1-117 above.

121.   As registered nurses licensed by the State of South Dakota, Defendants Cox and Lowitz each had a duty to provide reasonable medical care and treatment to persons in their care, control, and custody, including Mr. Pomani.

122.  Defendants Cox and Lowitz breached their duty of care and were negligent when they failed to provide Mr. Pomani with reasonable, necessary medical treatment.

123.  Defendants acted on their own behalf and on behalf of their employers when they committed the acts and omissions giving rise to the claims as alleged in this Complaint.

124.  Because Defendants Cox and Lowitz acted on behalf of Defendants Hughes County, Mike Leidholt and Bill Dodge when they committed negligent acts against Mr. Pomani,

Defendants Hughes County, Mike Leidholt and Bill Dodge are liable to Plaintiff for any harm caused by employees acting on their behalf.

125.  Defendants' negligence proximately caused Mr. Pomani's significant physical and mental pain, suffering, loss of chance of survival and death, causing the damages to him and to is Estate as alleged in this Complaint.

## PRAYER FOR RELIEF

WHEREFORE, Valerie Estes as the Special Administrator for the Estate of Seryl Leroy Pomani, prays for the following relief:

1. For judgment in favor of Plaintiff declaring that the acts and omissions of the Defendants were unconstitutional and a violation of Mr. Pomani's rights under the 8th and 14th Amendments to the United States Constitution and Article VI, § 23 of the Constitution of the State of South Dakota.

2. For judgment in favor of Plaintiff and against the Defendants, jointly and severally, in a monetary amount to be proven at trial to compensate the Plaintiff for the Defendants' violation of Mr. Pomani's constitutional rights in such sum as he would have recovered for his pain and suffering if he had survived, including all expenses related to his medical care, death and burial.

3. For judgment in favor of Plaintiff and against the Defendants, jointly and severally, in a monetary amount to be proven at trial to compensate the Plaintiff for Defendants' violation of Mr. Pomani's constitutional rights in such sum as will fairly compensate his surviving family for the permanent loss of his companionship, support, aid, advice and assistance.

4.  For the reasonable expenses of Mr. Pomani's necessary medical care, treatment, funeral and burial;

5.   For Mr. Pomani's  pain and suffering experienced by him between the time of  his injury and his death;

6.   For the value of Mr. Pomani's apart from his earning capacity;

7.   For the loss to Mr. Pomani's beneficiaries of other expected benefits that have a monetary value;

8.   For punitive damages as allowed by law;

9. For Plaintiff's costs and disbursements as allowed by law, including reasonable attorney fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988; and

10. For such other relief as deemed just and equitable by the Court.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury upon these claims pursuant to F.R.C.P. 38(a).

Dated this 25th day of August, 2020.

JOHNSON POCHOP & BARTLING
LAW OFFICE, LLP


Stephanie E. Pochop
P.O. Box 149 | 405 Main St.
Gregory, South Dakota 57533
(605) 835-8391
Stephanie@rosebudlaw.com
*Attorneys for Plaintiff Valerie Estes*