UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| VALERIE ESTES, as the Special Administrator of the Estate of Seryl Leroy Pomani, and ESTATE OF SERYL LEROY POMANI, | 3:20-CV-03013-KES |
| Plaintiffs, | |
| vs. | ORDER GRANTING DEFENDANTS' MOTION TO DISMISS COUNTS 3-6 |
| HUGHES COUNTY, SOUTH DAKOTA; JACLYN LOWITZ, in her individual and official capacity; JULIE COX, in her individual and official capacity; BILL DODGE, in his individual and official capacity; and MIKE LEIDHOLT, in his individual and official capacity, | |
| Defendants. | |

Valerie Estes, as the special administrator of the estate of Leroy Pomani, and the estate of Leroy Pomani (Pomani representatives), filed suit against Hughes County, South Dakota, Jaclyn Lowitz, in her individual and official capacity, Julie Cox, in her individual and official capacity, Bill Dodge, in his individual and official capacity, and Mike Leidholt, in his individual and official capacity. Docket 1. The Pomani representatives filed an amended complaint that alleged six counts, including two counts under 42 U.S.C. § 1983, one count under the Fourteenth Amendment to the United States Constitution, and three state-law claims. Docket 5. *Id.* Hughes County, Bill Dodge, and Mike Leidholt (Hughes County defendants) move to dismiss counts three, four, and

five of the amended complaint.[1] Docket 17. Jaclyn Lowitz and Julie Cox each move separately to dismiss counts three, four, five, and six. Dockets 22, 24. The Pomani representatives oppose each motion. Dockets 26, 27, 29. For the following reasons, the court grants the three motions to dismiss and dismisses counts three, four, five, and six of the amended complaint. Counts one and two of the amended complaint alleging civil rights violations under 42 U.S.C. § 1983 are not included in any of the motions to dismiss and will proceed.

## FACTUAL BACKGROUND

The facts alleged in the amended complaint, accepted as true, are as follows:

The United States Marshal Service (USMS) contracts with and pays Hughes County to provide custodial care for adults who are committed to its custody through judicial order. Docket 5 ¶ 17. Hughes County operates the Hughes County Jail, provides for the safety, health care, and serious medical needs of its inmates, and oversees the hiring, qualifications, supervision, and training of its staff. *Id.* ¶ 18. Hughes County develops and approves policies and procedures so that inmates are not subject to excessive risk to their health and safety while in custody and administers the jail facility in compliance with federal and state safety laws. *Id.* Hughes County employs a jail nurse who

---

[1] The Hughes County defendants' motion initially states that they move to dismiss all counts against them. Docket 17 at 1. The motion later states grounds for the motion that apply to only counts three, four, and five. *Id.* The corresponding brief similarly addresses only counts three, four, and five of the amended complaint and does not brief any issues related to counts one and two. *See* Docket 18. Thus, the court addresses only counts three, four, and five against the Hughes County defendants.

directly supervises and assesses inmates' safety, healthcare, and serious medical needs. *Id.* ¶ 19. The jail nurse also advises and directs the jail's correctional officers about how and when to provide medical care for inmates when the jail nurse is not personally present. *Id.*

At all times relevant to the Pomani representatives' claims, Lowitz, a registered nurse, was employed by the Hughes County Jail as the jail nurse. *Id.* ¶¶ 11, 23. Dodge, Hughes County's jail administrator, was responsible for supervision of jail staff, the creation and enforcement of jail policies, the supervision, protection, and control of Hughes County Jail inmates, and providing for inmates' serious medical needs. *Id.* ¶ 13. Leidholt was employed by Hughes County as sheriff. *Id.* ¶ 15. He was responsible for supervision of jail staff, enforcement of jail policies, and supervision, protection, and control of inmates at the Hughes County Jail. *Id.* He was also responsible for providing for inmates' serious medical needs. *Id.* Cox, Lowitz's supervisor, was a nurse practitioner employed by Avera St. Mary's Hospital and was an independent contractor with the Hughes County Jail. *Id.* ¶ 12.

Cox was employed by Avera St. Mary's hospital and contracted to the Hughes County Jail under a Personnel Services Agreement between the Hughes County Jail and Avera. *See* Dockets 19, 19-1; *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017) ("In a case involving a contract, the court may examine the contract documents in deciding a motion to dismiss." (citation omitted)). The Hughes County Jail and Avera entered into the Avera contract on January 1, 2015. Docket 19-1 at 4.

3

In June 2018, Seryl Pomani, a resident of Rosebud, South Dakota, was indicted on third degree burglary and larceny charges. Docket 5 ¶¶ 5, 28. A warrant was issued for Pomani's arrest, and on July 13, 2018, the USMS took him into custody. *Id.* ¶¶ 28-29. Pomani was transferred to the Hughes County Jail and booked as a pretrial detainee that day. *Id.* ¶ 30. Pomani had a documented medical history of severe, chronic medical conditions, including Type I diabetes, diabetic neuropathy, asthma, hypertension, hyperlipidemia, PTSD, and major depression. *Id.* ¶ 31. He was prescribed various medications to manage his conditions, including insulin. *Id.*

As the jail nurse, Lowitz assumed care of Pomani's medical needs once he was entrusted to the custody of the Hughes County Jail. *Id.* ¶ 24. Hughes County Jail policy required approval from Lowitz before medication or medical care could be administered to any inmate. *Id.* ¶ 20. Jail staff was also required to get approval from Lowitz before seeking medical care for any inmate. *Id.* ¶ 21. If Lowitz could not be reached, jail staff was to contact Cox for approval for care. *Id.* The jail staff was instructed to call emergency care without pre-approval from Lowitz or Cox only in the event of an obvious emergency, like an inmate "bleeding out." *Id.* Leidholt and Dodge made it clear to jail staff that failure to follow this approval protocol could result in potential disciplinary action. *Id.* ¶ 22. Lowitz was aware of her responsibility to approve distribution of medication and medical care to inmates and to direct jail staff regarding inmates' care and treatment. *Id.* at 23. Lowitz and other jail staff were familiar

with Pomani and his medical needs because he previously had been detained at the Hughes County Jail. *Id.* ¶ 32.

The U.S. Marshal who transported Pomani to the Hughes County Jail delivered Pomani's prescription medications to the Hughes County Jail intake staff. *Id.* ¶ 33. Jail staff were required to obtain Lowitz or Cox's approval before administering Pomani's prescription medication. *Id.* ¶ 34. Jail staff did an initial check of Pomani's blood sugar during the intake process, and his blood sugar registered between 350 and 400. *Id.* ¶ 36. The staff who tested Pomani's blood sugar recognized that the test result was outside the normal range and attempted to consult with Lowitz. *Id.* ¶ 37.

Lowitz was not at work on Friday, July 13, 2018, when Pomani was delivered to the jail. *Id.* ¶ 35. Jail staff reached her by telephone and reported to her Pomani's blood sugar test results. *Id.* ¶ 37. Lowitz recognized Pomani's name because the two had engaged in a dispute about Pomani's medical needs when he was previously held at the Hughes County Jail. *Id.* ¶ 38. Lowitz advised jail staff that she would evaluate Pomani's condition the following Monday. *Id.* ¶ 39. She did not authorize staff to provide any treatment to Pomani or to give him any of his prescribed medications. *Id.*

Between July 13 and July 16, 2018, Pomani complained of increasing discomfort. *Id.* ¶ 40. Hughes County Jail staff became increasingly concerned that he was undergoing a serious medical issue and they made repeated calls to Lowitz about Pomani's condition and his medications. *Id.* ¶¶ 41-42. Lowitz repeatedly responded that she would evaluate Pomani the following Monday,

5

and she did not authorize any further treatment or direct jail staff to call Cox or another medical provider or nurse, or to take Pomani to the hospital. *Id.* ¶ 43. Jail staff was not authorized to contact Cox for a second opinion on Pomani's condition. *Id.* ¶ 45.

"[B]y Sunday, July 16, 2018," jail staff on their day shift observed that Pomani was suffering from physical symptoms that included sweating, nausea, and vomiting.[2] *Id.* ¶ 46. Jail staff administered another blood sugar test to Pomani and took his blood pressure. *Id.* Pomani's blood sugar registered above the maximum range detected by the Hughes County Jail's equipment, and per policy, jail staff recorded his blood sugar as "high." *Id.* Several members of the jail staff became so concerned about Pomani's condition and high blood sugar that they gathered to call Lowitz and report their concerns. *Id.* ¶ 47. Lowitz replied that there was nothing she could do, and that Pomani would be fine until Monday. *Id.* ¶ 48. Neither Lowitz nor any member of the jail staff approved the distribution of Pomani's prescriptions or refered him for further evaluation or care. *Id.* ¶¶ 49-50.

Early in the morning on "Monday, July 17, 2018," jail staff discovered Pomani unresponsive in his cell.[3] *Id.* ¶ 51. Pomani was transferred to Avera

---

[2] The amended complaint states that jail staff observed Pomani was suffering physical symptoms on "Sunday, July 16, 2018." Docket 5 ¶ 46. July 16, 2018, was a Monday, not a Sunday. It is unclear whether staff observed those symptoms on Monday, July 16, 2018, or Sunday, July 15, 2018.

[3] The amended complaint states that Pomani was discovered unresponsive on "Monday, July 17, 2018." Docket 5 ¶ 51. July 17, 2018, was a Tuesday. It is unclear whether he was discovered unresponsive on Monday, July 16, 2018, or Tuesday, July 17, 2018.

Hospital in Sioux Falls, South Dakota. *Id.* ¶ 52. The history provided to his physician was that he had been found at 6:00 a.m. on July 17, 2018, after a three- to four-day history of nausea and vomiting. *Id.* Pomani remained unresponsive until his death on July 18, 2018. *Id.* He suffered cardiac arrest and died from an anoxic brain injury, diabetic ketoacidosis, and insulin dependent diabetes mellitus. *Id.* ¶ 53.

Some Hughes County Jail log notes regarding the calls made to Lowitz about Pomani's condition went missing after Pomani was transferred to the hospital. *Id.* ¶ 54. Lowitz was permitted to resign from her position at the Hughes County Jail without disciplinary action in September 2018. *Id.* ¶ 55. Cox was not subject to disciplinary action. *Id.* ¶ 56.

## LEGAL STANDARD

Rule 12(b)(6) provides for dismissal of a claim if the claimant has failed to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The court must accept the well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *Schriener v. Quicken Loans, Inc.*, 774 F.3d 442, 444 (8th Cir. 2014). The "plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration in original) (internal quotation marks and citation omitted). "If a plaintiff cannot make the requisite showing, dismissal is appropriate." *Abdullah v. Minnesota*, 261 F. App'x 926, 927 (8th Cir. 2008).

## DISCUSSION

### I.   Count Three: Fourteenth Amendment Equal Protection Violations against All Defendants

The Hughes County defendants, Cox, and Lowitz each allege that the Pomani representatives failed to meet the pleading standard of Rule 12(b)(6) on their Fourteenth Amendment equal protection claim because they failed to state sufficient facts to state a claim on which relief may be granted. Docket 18 at 7-8; Docket 23 at 8-9; Docket 25 at 3-5. The court addresses each motion in turn.

The United States Constitution provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. "The Equal Protection Clause generally requires the government to treat similarly situated people alike." *Klinger v. Dep't of Corr.*, 31 F.3d 727, 731 (8th Cir. 1994) (citing *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985)). "Thus, the first step in an equal protection case is determining whether the plaintiff has demonstrated that [he] was treated differently than others who were similarly situated to [him]." *Id.* Next, the differential treatment must be the result of intentional discrimination based on race. *Foster v. Wyrick*, 823 F.2d 218, 221 (8th Cir. 1987) (plaintiffs failed "to

state a cause of action under the Equal Protection clause, because there [was] no allegation of intentional discrimination."). *See also Patel v. United States Bureau of Prisons*, 515 F.3d 807, 815 (8th Cir. 2008) (In order to establish [] an equal protection claim, a prisoner must show that he is treated differently from similarly-situated inmates and that the different treatment is based upon either a suspect classification or a 'fundamental right.' " (quoting *Weems v. Little Rock Police Dep't*, 453 F.3d 1010, 1016 (8th Cir. 2006))). Thus, to survive this motion to dismiss, the Pomani representatives must allege sufficient facts to state a plausible claim that first, Pomani was treated differently from similarly situated inmates, and that second, the treatment was based on his race.

As to the first prong, the Pomani representatives claim that Pomani was treated differently than similarly situated inmates in the Hughes County Jail because the jail took steps to provide for inmates' care and treatment, but Pomani did not receive such treatment. Docket 26 at 17; Docket 29 at 6. The Pomani representatives allege that Hughes County employed a jail nurse whose responsibility was to provide medical care to inmates and advise jail staff on providing such care, but that medical care was not provided to Pomani. Docket 5 ¶¶ 19, 43-44. The Pomani representatives also allege that a group of jail staff became so concerned about Pomani's condition and Lowitz's failure to direct treatment that they banded together to again call Lowitz and report their concern. *Id.* ¶ 47.

9

These two facts—that the Hughes County Jail protocols provided for treatment Pomani did not receive, and that jail staff were so concerned about Lowitz's failure to authorize treatment that they took extra measures to verify that he should not receive medication—lead to a plausible inference that Pomani was treated differently from similarly situated inmates. The Pomani representatives allege that he did not receive the medical care Hughes County had contracted to provide. They further alleged that Lowitz's decision to not treat Pomani was so remarkable that jail staff called Lowitz to verify that he should not be receiving treatment. If Lowitz frequently advised that inmates in declining condition and with high blood sugar not receive medication, then it would be unlikely that the staff would react with such concern in Pomani's case.

As to the second requirement, the Pomani representatives claim that Pomani received treatment different from other inmates based on his race. Docket 26 at 17-18; Docket 29 at 6-9. While Pomani's race is not alleged in the complaint (*see* Docket 5), neither the Hughes County defendants nor Lowitz appear to dispute that Pomani was Native American. *See* Docket 18 at 8-9; Docket 25 at 4-5; Docket 28 at 4; Docket 31 at 4. The amended complaint contains no other facts that show differential treatment of Pomani based on his race. While the amended complaint alleges that Lowitz knew Pomani from a past interaction and that the two had a prior dispute about Pomani's medical needs, it does not allege that the prior dispute involved Pomani's race. Docket 5 ¶ 38. Nor does the amended complaint allege that Lowitz's treatment of Pomani

10

in anyway related to his race, except to say in count three that "Lowitz racially profiled and/or stereotyped and discriminated against [Pomani] on the basis of his race." *Id.* ¶ 89. That statement is a legal conclusion, not a factual allegation, and thus must be disregarded in deciding a motion to dismiss. *See Ashcroft*, 556 U.S. 678. The Pomani representatives failed to state facts supporting a plausible claim that Pomani was treated differently because of his race. Thus, the court grants the motions to dismiss as to count three.

The Pomani representatives admit that the amended complaint contains few factual allegations as to the Fourteenth Amendment claims against Cox and the Hughes County defendants and ask that they be permitted to file a second amended complaint adding a Fourteenth Amendment claim once discovery is received on the remaining claims. Docket 26 at 18; Docket 27 at 17. Under the Federal Rules of Civil Procedure, any amendment to the pleadings made after service of a responsive pleading may only be made with the opposing party's written consent or the court's leave. Fed. R. Civ. P. 15(a). Further, the Pomani representatives' request does not comply with Local Rule 15.1, which requires any party moving to amend a pleading to attach to its motion a copy of the proposed amended pleading with proposed changes highlighted. D.S.D. Civ. LR 15.1. The court declines to give leave to amend at this time. Any motions to amend the pleadings should be made at the time the Pomani representatives wish to amend their complaint and will be considered after briefing by the parties.

11

## II.     Count IV: Breach of Contract

Count IV of the amended complaint alleges that the Hughes County defendants, Cox, and Lowitz breached contracts to which Pomani was a third-party beneficiary. The court applies South Dakota state law to the breach of contract claim, as it arises under supplemental jurisdiction. *See Emmenegger v. Bull Moose Tube Co.*, 324 F.3d 616, 624 n.9 (8th Cir. 2003). Under SDCL § 53-2-6, "[a] contract made expressly for the benefit of a third person may be enforced by him at any time before the parties thereto rescind it." A third-party may only sue to enforce a contract when the contracting parties' expressly intended at the time of contracting to benefit the third party. *Sisney v. State*, 754 N.W.2d 639, 643 (S.D. 2008). Further, "incidental beneficiaries are not entitled to third-party beneficiary status[,]" and "even 'the mention of one's name in an agreement does not give rise to a right to sue for enforcement of the agreement where that person is only incidentally benefited.' " *Id.* (quoting *First Fed. Sav. & Loan Ass'n of Bismarck v. Compass Invs. Inc.*, 342 N.W.2d 214, 218 (N.D. 1983). Thus, a third-party seeking to enforce the contract must show "that the contract was entered into by the parties directly and primarily for his benefit." *Id.* at 643-44 (citing *Mercado v. Mitchel*, 264 N.W.2d 532, 538 (Wis. 1978)).

Government contracts are especially scrutinized "in the area of third-party beneficiary rights because, to some extent, every member of the public is directly or indirectly intended to benefit from such a contract." *Id.* at 644 (quoting *Clifton v. Suburban Cable TV Co., Inc.*, 642 A.2d 512, 515 (Pa. Super.

12

Ct. 1994). Courts do not infer private third-party rights in government contracts because of the "potential burden that expanded liability would impose." *Id.* Thus, "[t]he right of enforcement in public contracts can only arise from the plain and clear language of the contract." *Id.*

The Pomani representatives' breach of contract claim is premised on an alleged breach of a contract between the Hughes County Jail and Avera St. Mary's Hospital.[4] Docket 26 at 5-16; Docket 27 at 15-17; Docket 29 at 8-10; *see* Docket 19-1. The Avera contract, entered into on January 1, 2015, states:

> WHEREAS, Hughes County Jail, Hughes County, South Dakota['s] purpose is to serve the citizens of Hughes County and patients of Hughes County and the surrounding region by providing correctional services including healthcare services to the Hughes County jail inmate population, in Hughes County, South Dakota area; and
> . . .
>
> WHEREAS, it is the intent of Hughes County Jail to contract with Avera St. Mary's on an arm's-length and fair market value basis for personnel services to be provided to Hughes County Jail by Avera St. Mary's;
>
> NOW THEREFORE, in consideration of the mutual covenants and promises set forth herein, Hughes County Jail and Avera St. Mary's agree as follows:
>
> Section 1: <u>Services</u>. Hughes County Jail agrees to purchase, and Avera St. Mary's Hospital agrees to provide, personnel to Hughes County Jail.
> . . .

---

[4] The amended complaint implies that the breach involved contracts between Hughes County and Dodge, Leidholt, Cox, and Lowitz for employment or to provide medical services. Docket 5 ¶¶ 100-01. The Pomani Representatives' response briefs address only the contract between the Hughes County Jail and Avera St. Mary's Hospital, and do not discuss any contracts where the individual defendants are parties. *See* Docket 26 at 5-16; Docket 27 at 15-17; Docket 29 at 8-10. Thus, the court addresses only the Avera contract here.

Section 4: <u>Independent Contractor</u>. The parties agree that the personnel furnished by Avera St. Mary's at all times shall act and perform as independent contractors. Hughes County Jail shall neither have nor exercise any control or direction of the methods by which the personnel furnished by Avera St. Mary's shall perform their duties, professional work and functions, except that the personnel furnished by Avera St. Mary's are expected to perform their professional work and functions at all times in strict accordance with the currently approved and accepted methods in the medical community. Avera St. Mary's shall indemnify Hughes County Jail for any liability that results from the application of this Section, including, without limitation, liability with respect to withholding taxes.
. . .

Section 11. <u>Benefits and Obligations</u>. The covenants and agreements contained herein shall inure to the benefit and be binding upon the parties and their respective legal successors. Any persons succeeding to the interest of a party shall succeed to all such party's rights, interest and obligations hereunder, subject to and with the benefit of all terms and conditions of this Agreement . . . No party may succeed to the interests of the named parties unless agreed to in writing by all parties.
. . .

Section 21. <u>Privacy Regulations</u>.

(d)    <u>No Third Party Beneficiaries</u>. Nothing in this Section 21 shall confer upon any person other than the parties and their respective successors or assigns, any rights, remedies, obligations, or liabilities whatsoever.
. . .

*Id.* at 4-11.

The "clear and plain language" of the Avera contract does not show that at the time the contract was entered into, the parties intended it to be "directly and primarily for [Pomani's] benefit." *Sisney v. State*, 754 N.W.2d at 643-44. The contract provides for medical services provided by Avera to the Hughes County Jail. Docket 19-1 at 4. The contract does not state that the purpose of the relationship is to benefit inmates at the jail. Its purpose is to assist the

14

Hughes County Jail in providing services to inmates for which the jail is responsible. The contract also states that the "covenants and agreements contained herein shall inure to the benefit and be binding upon the parties and their respective legal successors." *Id.* at 7. The only mention of third-party beneficiaries in the contract is in Section 21, which states that that section shall not "confer upon any person other than the parties and their respective successors or assigns, any rights, remedies, obligations, or liabilities whatsoever." *Id.* at 11. While the Pomani representatives assert that this paragraph creates an implied third-party beneficiary right in the remainder of the contract, the court disagrees. The South Dakota Supreme Court is clear that a third party's right to sue to enforce a government contract can only "arise from the plain and clear language of the contract." *Sisney v. State*, 754 N.W.2d at 643-44. Such language is not present in the Avera contract. Thus, as a matter of law, the Pomani representatives do not have a legal right to sue for enforcement of the Avera contract.

The Pomani representatives argue that this case is analogous to another South Dakota Supreme Court case litigated by Sisney, *Sisney v. Reisch*, 754 N.W.2d 813 (S.D. 2008). There, the Court found that Sisney had a third-party right to enforce a settlement agreement between a class of prisoners of which he was a member and the Department of Corrections. *Id.* at 817-18. The court reasoned that "[s]tanding to enforce an agreement as a third-party beneficiary may also be conferred upon a class of individuals[]" when the contract's terms "clearly express intent to benefit that party or an identifiable class of which the

15

party is a member." *Id.* at 818. (quoting *Verni v. Cleveland Chiropractic Coll.*, 212 S.W.3d 150, 153 (Mo. 2007). The court found that the agreement clearly intended to benefit all members of the class of which Sisney was a part, as the agreement benefited "all Jewish inmates" who requested a kosher diet. *Id.*

The contract here is more analogous to the *Sisney v. State* contract, where a private entity and the government contracted to provide a service to inmates for which the government was responsible. There, the court held that Sisney did not have third-party standing because the contract did not expressly indicate intent to benefit him. *Sisney v. State*, 754 N.W.2d at 643-44.  The Pomani representatives seek to sue as a third-party beneficiary to enforce a contract between the state and a vendor of services, and the contract did not expressly state that Pomani or inmates at the Hughes County Jail were intended benficiaries. Thus, under South Dakota law, the Pomani representatives may not sue as a third-party beneficiary to the contract between the Hughes County Jail and Avera St. Mary's Hospital. The motions to dismiss count four of the amended complaint are granted.

## III.   Counts V and VI: Negligence and Medical Negligence

### A.   South Dakota's Notice Statute

#### 1.   Hughes County Defendants

South Dakota law provides that "[n]o action for the recovery of damages for personal injury, property damage, error, or omission or death caused by a public entity or its employees may be maintained against the public entity or its employees unless written notice of the time, place, and cause of injury is

16

given to the public entity . . . within one hundred eighty days after the injury."
SDCL § 3-21-2. The Pomani representatives acknowledge that they cannot
show compliance with SDCL § 3-21-2 as to the Hughes County defendants and
ask that count five be dismissed against the Hughes County defendants.
Docket 26 at 19. Thus, the court grants the Hughes County's defendants'
motion to dismiss as to count five.

### 2. Lowitz

Under SDCL § 3-21-1, the term "employee" in SDCL § 3-21-2 refers to
"all current and former employees and elected and appointed officers of any
public entity" but "does not include independent contractors." SDCL § 3-21-
1(1). Lowitz argues that SDCL § 3-21-2 bars counts five and six against her
because she was not provided notice within 180 days of the injury.[5] Docket 25
at 7. The amended complaint states that Lowitz was "employed by Hughes
County as the HCJ Jail Nurse." Docket 5 ¶ 11. The amended complaint makes
no allegations that Lowitz was an independent contractor, rather than
employee, of the Hughes County Jail. *See id.* The amended complaint states
that Cox was Lowitz's supervisor and that Cox was employed by Avera and
contracted to the Hughes County Jail. *Id.* ¶ 12. The Avera contract also states
that Cox, who was subject to the Avera agreement, was an independent
contractor. Docket 19-1 at 1, 13. Thus, even though the amended complaint

---

[5] The parties do not dispute that Cox was an independent contractor employed
by Avera, not an employee of the Hughes County Jail. Docket 5 ¶ 12; Docket
23 at 1. Thus, SDCL § 3-21-2 does not apply to Cox and the Pomani
representatives do not need to show that they provided her notice of their
claims within 180 days of injury.

alleges Lowitz was an employee, it is plausible that she, like her supervisor Cox, was an independent contractor. Thus, the Pomani representatives successfully stated a plausible claim that Lowitz was not subject to SDCL § 3-21-2's notice requirement and counts five and six survive the motion to dismiss on those grounds.[6]

### B.    South Dakota's Medical Malpractice Statute of Repose

SDCL § 5-2-14.1 provides that "[a]n action against a . . . registered nurse [or] licensed practical nurse . . . for malpractice, error, mistake, or failure to cure, whether based upon contract or tort, can be commenced only within two years after the alleged malpractice error, mistake, or failure to cure shall have occurred . . . ." SDCL § 15-2-14.1. This two-year limit is a statute of repose and thus "begins running upon the occurrence of a specified event rather than the discovery of a cause of action." *Pitt-Hart v. Sanford USD Med. Ctr.*, 878 N.W.2d 406, 413 (S.D. 2016). A statute of repose cannot be delayed by estoppel or tolling. *Id.*

### 1.    Whether the action commenced outside the timeframe of the statute of repose

Here, the amended complaint states that the negligent actions allegedly taken by Cox and Lowitz occurred between July 13, 2018, and July 16, 2018. Docket 5 ¶ 5. The complaint was filed, commencing the case, on July 17, 2020. Docket 1; *see* Fed. R. Civ. P. 3. The Pomani representatives argue that Lowitz

---

[6] Lowitz also alleges that count four against her is barred by the notice statute. The court likewise finds that count four survives the motion to dismiss based on SDCL § 3-21-2.

and Cox continued to be involved with Pomani's treatment once he was brought to the hospital on July 17, 2018. Docket 29 at 13-14. They allege that because Cox was employed at Avera St. Mary's Hospital where Pomani was brought, she may have continued providing him care until July 18th, 2018, when he died. *Id.* The Pomani representatives also allege that Lowitz's treatment of Pomani continued on July 17, 2018. They argue that because a jail employee provided Pomani's medical history to the hospital, it is reasonable to assume that Lowitz was involved in his treatment once he arrived at the hospital. *Id.*

A complaint must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp*, 550 U.S. at 570. Mere conjecture is not sufficient to support a claim for relief. *See Id.* Here, the conclusion that Cox may have been involved in Pomani's treatment on July 17th, 2018, only because she was employed by the hospital where he was admitted relies only on conjecture and is not plausible on its face. The amended complaint does not allege that Cox treated Pomani on July 17th, 2018, after he arrived at the hospital, or that she worked in a department that treated him. The Pomani representatives fail to plausibly allege that Cox's actions pertaining to the suit continued on July 17th, 2018.

As to Lowitz, there are no facts alleged in the amended complaint tying her to Pomani's treatment after the final phone call from jail staff to Lowitz on July 16, 2021. Docket 5 ¶¶ 48-56. The Pomani representatives state that because someone from the jail provided Pomani's medical history to the

19

hospital when he was taken there, and because that history may have been inaccurate, it is reasonable to infer that Lowitz was involved with Pomani's emergency care and hospitalization. Docket 29 at 13. The court disagrees. It requires conjecture to assume that Lowitz was involved in Pomani's care at the hospital. The fact that someone from the jail supplied Pomani's medical history to the hospital does not lead to a plausible inference that Lowitz was involved in Pomani's treatment once he was taken to the hospital. Thus, the Pomani representatives fail to plausibly allege that Lowitz took any action related to Pomani's care after July 16, 2018. This action was commenced on July 17, 2020, which is later than two years after July 16, 2018. If the medical statute of repose applies to Cox and Lowitz, then counts five and six must be dismissed according to the statute.

### 2.   Whether South Dakota's medical statute of repose applies to Cox and Lowitz's actions

SDCL § 5-2-14.1 provides that "[a]n action against a . . . registered nurse [or] licensed practical nurse . . . for malpractice, error, mistake, or failure to cure, whether based upon contract or tort, can be commenced only within two years after the alleged malpractice error, mistake, or failure to cure shall have occurred . . . ." SDCL § 15-2-14.1. To determine whether SDCL § 15-2-14.1 applies to the Pomani family's negligence and medical negligence claims against Cox and Lowitz, the court first "determine[s] whether the type of defendant in this case is among those enumerated in SDCL 15-2-14.1." *Pitt-Hart*, 878 N.W.2d at 411. Lowitz was a registered nurse and Cox was a nurse practitioner at they time Pomani was in custody, and the Pomani

20

representatives do not dispute that SDCL § 15-2-14.1 applies to both Lowitz and Cox. Docket 27 at 8; Docket 29 at 11.

Next, the court must "determine whether the conduct alleged is of a type contemplated by SDCL 15-2-14.1." *Pitt-Hart*, 878 N.W.2d at 411. SDCL § 15-2-14.1 is intended to apply to a "broad range of conduct . . . ." *Id.* at 412. SDCL § 15-2-14.1 covers alleged "malpractice, error, mistake, or failure to cure" and conduct that is "a deviation from an accepted code of behavior (i.e., an error) or [] a fault resulting from carelessness (i.e., a mistake)." *Id.* (citing SDCL § 15-2-14.1). "[A]ny professional misconduct or any unreasonable lack of skill or fidelity in the performance of professional or fiduciary duties is 'malpractice' and comes within the professional or malpractice statute of limitations." *Bruske v. Hill*, 567 N.W.2d 872, 876-77 (S.D. 1997) (quoting *Colton v. Dewey*, 321 N.W.2d 913, 917 (Neb. 1982)).

For SDCL § 15-2-14.1 to apply, there must be "a nexus between the injury suffered by the plaintiff and the healthcare he received . . . ." *Pitt-Hart*, 878 N.W.2d at 412.  The *Pitt-Hart* Court noted that SDCL § 15-2-14.1 does not apply to all actions against a healthcare provider. *Id.* It contrasted the plaintiff in that case—a patient who was dropped by a healthcare technician after a knee surgery—with a hypothetical non-patient who slipped on ice outside a hospital. *Id.* While a nexus sufficient for SDCL § 15-2-14.1 existed for the plaintiff in *Pitt-Hart*, the Court signaled that it would not exist for the patient who slipped on ice. *Id.*

21

a.   SDCL § 15-2-14.1's application to Lowitz's conduct

The Pomani representatives argue that a nexus cannot exist between Pomani's injury and the care he received from Lowitz because Lowitz allegedly failed to provide any medical care to Pomani. Docket 27 at 9-10, Docket 29 at 12-14. They argue that Pomani was "no one's patient" and that as a result, SDCL § 15-2-14.1 cannot apply here. The court disagrees. The amended complaint alleges that Lowitz was the Hughes County Jail nurse and knew about Pomani's condition but failed to order treatment. Lowitz and Cox were responsible for giving jail staff permission to give Pomani his medications after he was booked into the Hughes County Jail. Docket 5 ¶ 34. Jail staff spoke with Lowitz, who, as jail nurse, advised that Pomani would not require treatment until after she evaluated him on Monday and that she "did not approve any further medical treatment". *Id.* ¶ 39. Lowitz repeatedly denied that Pomani required further treatment. *Id.* ¶ 43. Lowitz's decision to not order treatment for Pomani, as the jail nurse, has a direct nexus to Pomani's death. Pomani was in the class of individuals Lowitz was trusted to care for, inmates at the Hughes County Jail, and her actions were taken based on her professional judgment about whether he needed treatment. Lowitz was performing her duty as a healthcare provider when she refused to order treatment for Pomani. Given the South Dakota Supreme Court's broad interpretation of SDCL § 15-2-14.1, the court finds that the Pomani representatives failed to state a claim that Lowitz is not subject to SDCL § 15-

22

2-14.1. Thus, the SDCL § 15-2-14.1 statute of repose applies and the motion to dismiss counts five and six is granted as to Lowitz.

        b.     SDCL § 15-2-14.1's application to Cox's conduct

The Pomani representatives argue that Cox was negligent towards Pomani because she failed to intervene when Lowitz declined to treat Pomani.[7] Docket 27 at 5-6. Even if, unlike Lowitz, Cox was not directly involved in Pomani's treatment, her failure to intervene was still a decision made in her capacity as Lowitz's supervisor and a healthcare provider responsible for inmates' care and treatment at the Hughes County Jail. Given the South Dakota Supreme Court's broad application of SDCL § 15-2-14.1, the court finds that the Pomani representatives failed to state a claim that Cox is not subject to SDCL § 15-2-14.1. Thus, the SDCL § 15-2-14.1 statute of repose applies and the motion to dismiss counts five and six is granted as to Cox.

## CONCLUSION

The Pomani representatives fail to state a claim for which relief may be granted against all defendants as to their Fourteenth Amendment claim in count three. The amended complaint fails to allege that Pomani was a third-party beneficiary of the Avera contract, and thus, the Pomani representatives do not have standing to bring the breach of contract claim in count four. The parties agree that Hughes County, Dodge, and Leidholt may not be sued for

---

[7] The complaint does not allege that Cox was aware that between July 13, 2018, and July 16, 2018, Pomani had been admitted to the Hughes County Jail and required care. Docket 5. For purposes of the SDCL § 15-2-14.1 analysis, the court assumes Cox was aware of Pomani's condition and that he was an inmate.

negligence because they were not provided with the notice required by South Dakota law. Finally, the negligence and negligent nursing care and treatment claims against Cox and Lowitz fail because this action was filed outside South Dakota's medical malpractice statute of repose. Counts one and two of the amended complaint alleging civil rights violations under 42 U.S.C. § 1983 will proceed.

Dated May 21, 2021.

BY THE COURT:

/s/ Karen E. Schreier
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE